Please. Mary, call the case, please. Case number 13-2077. Deepalakshmi Moorthy v. Chhanna Arjuna. Counsel, we're going to present today. Would you please approach the podium and identify yourself? August Das for Petitioner Deepalakshmi Moorthy. And Annette Fernals on behalf of Chhanna Arjuna. All right. So we'll have about 15 minutes each. And does the appellant wish to reserve time for rebuttal? I'd like to reserve three minutes. Very well. All right. Thank you. Whenever you're ready, Counsel. May it please the Court. The issue in this case is whether the earnings of an S corporation controlled by the obligor parent who decides to not distribute some of the earnings of the corporation constitute income within the meaning of Section 505 of the Illinois Marriage and Dissolution of Marriage Act. As a practical matter, what this case presents is the question whether the father gets to decide for himself what his child support obligation will be. In this case, the father is the sole shareholder, the sole director, and the 90, I'm sorry, he's the sole officer, sole director, and 91% shareholder of the corporation. He decides how much of the earnings of the corporation will be paid to himself as salary, how much will be distributed as earnings, and how much will remain undistributed. So he's the one who's in control all the way through. And the legislation is clear and the cases are clear that his control of the corporation is the deciding factor in determining whether the earnings of the corporation go to the basis for the calculation of his child support obligation. Now, in this case... Counsel, are there any cases that define what exactly we mean by control in this type of a situation? I mean, does it have to be 100% control? Does it have to be 50% control? What are we talking about here in terms of control? No, the cases say that the question is whether he gets to make the decision I understand that, but what I'm saying, though, is in terms of the amount of control. I mean, because he's a majority shareholder in the corporation. There's a minority shareholder in the corporation. But what if we have a situation here, because this is a case of first impression here, how do we define control here? Well, the laws of corporations say that the majority shareholder gets to decide whether or not income is distributed or not. Well, Mr. Arjuna testified that he felt that he had a fiduciary duty to the minority shareholder when making those decisions. Do you disagree with that? Yes, I disagree that he had a fiduciary duty to... He certainly has a duty to inform the minority shareholder of what he's going to do with the distributions. And he can't make a distribution to himself as a shareholder without including the minority shareholder's proportion. That is, if he's going to declare a dividend, he can't declare 100% to himself. He has to do it according to the amount of stock each of them hold. So the minority shareholder has to get his 9% interest of whatever distribution is made. Well, just to follow up on that, I mean, if he made a distribution that was not in the best interest of the continuing interest of the corporation, wouldn't he be subjected to a shareholder suit or a shareholder derivative suit or something along those lines? I'm sorry, I missed a couple words of that. Well, if he made a distribution that was not in the best interest of the corporation, such as if he bankrupted or made the corporation cash poor at a time that it needed cash, wouldn't he subject himself to a lawsuit by the minority shareholder? As a director and an officer, I suppose he could be subjected to a shareholder derivative suit for breach of fiduciary duty if he wasn't acting in the best interest of the corporation. No, that's what I'm getting at. I mean, he said in his testimony that he felt that he had a fiduciary duty to the corporation and to the other shareholder to retain earnings. Is there some law that says that he has no obligation to the other shareholder? Well, first, he's entitled to, he's protected by the business judgment rule. But secondly, I think it's important to note that what we're asking for here is not a requirement that he make distributions from the corporation to pay the child support here. That's not what's at issue here. What's at issue is whether or not the earnings of the corporation are going to calculate what his income is for the basis of child support. Just as he has to pay taxes, he as an individual is responsible for the taxes on the earnings of the corporation. He has to pay them. The corporation doesn't. He causes the corporation to make those payments. But in the same way, he individually would be responsible to make the child support payments. He can decide, he as the controlling shareholder of the corporation can decide whether to make those payments by making distributions from the corporation. Was the trial court presented with any audits of the corporation since 2007 when he became the majority shareholder? No, it was not. And I think that's an important point to make here, which is the legislation and the Supreme Court rules and the case law on the question of child support is different than it is in most other areas of law. That is, the legislation states that income is income. And the case law, as I said, states that the control of the shareholder decides whether or not his income is income. Specifically, what case law are you referring to? I'm referring to in the issue of determining shareholder control, it would be Joint and Rogers. Now, those cases refer to determining what's marital property for the purpose of calculating what's income to the spouse. But I think the analogy holds here. And the statute, the child support statute also says in Section 102 of the Marriage and Dissolution of Marriage Act that the act is to be liberally construed to further the purposes of the statute, which include making sure children are supported. Now, you will also see from the legislation that all income is income subject to certain specific exclusions, such as monies that are paid for taxes, money that is withheld by an employer for retirement. In every case, in every instance of those legislative carve-outs for calculation of income, those are carve-outs that are, first, objectively verifiable, and, second, are beyond the control of the obligor parent. You know, just to make this very simple, normally in a subchapter S corporation, there is certain seed money that is needed to operate the company. Do you agree to that? Seed money? Yes. Okay. And are you looking at any of that seed money to be income? I think the income, I think there needs to be an objective standard, and I think the seed money should be counted as income for purpose of calculating his child support obligation. I think it's fine. Well, there's no cases that say that. There are no cases in Illinois that say that. That's right. There are no cases that calculate this either way. My point is, if he needs to make reserves for the growth of the company, that's fine. He can make reserves. He can keep 80% as reserves, but the reserves of the corporation don't come before his responsibility to support his child. I would think that you would have to prove that the money that is part of the retained earnings is not seed money, and then the case law would support your position. Well, a couple of points on that. First, in this case, I think the – I did do examination, and he testified that he had – that there was no capital equipment. He had no capital expenses, no leases that he had to pay, no equipment costs. This was a consultant. Well, he had to pay salaries and things of that nature. That's right. That's right. And he gave no testimony as to how much is needed for that. The problem is, if we're looking at – if we're going to have a rule that says that there has to be an evaluation done as to whether the obligor father is keeping earnings that are excessive, we're looking at a situation where the single parent, who's trying to get food, clothing, and shelter for her minor child, is going to have to hire experts to evaluate the operations of the corporation and second-guess the business judgment of the father who controls the corporation. It's going to take time. It's going to take money. And that's not what the statute calls for. The statute says that the father has an obligation to contribute to the support of the child. And that obligation exists whether he is an employee of a corporation working for a salary or whether he's chosen to be the owner of a corporation. Now, in this case, the father has chosen to take the S corporation election. What that means is he's chosen to say to the government that this money of the corporation counts as – the earnings of the corporation count as his money for the purposes of paying taxes. It counts as his money. It's not taxed to the corporation. So in the same way, his responsibility is to take care of his child. Those earnings should pass through. Also, if you look at the record in this case. Well, let's just talk about the general concept of fairness. Is it fair to the spouse paying support to include in his income retained earnings that are necessarily held in the corporation in order to keep the corporation solvent in a position to pay salaries and unforeseen expenses? Is it fair to the spouse paying support to have to pay support based on income that's not available to him? Well, first, I disagree that the income isn't available to him. Well, you know, if you just take my scenario. Sure. If it's reasonable and necessary to keep the corporation afloat, I would say it's not available to him. And, you know, he shouldn't be put to the choice of bankrupting the corporation. And frankly, the long-term viability of the corporation is in everybody's interest. So I would say that's a given in my scenario. It's not available to him if it's reasonable and necessary. And I think the case laws, at least the cases from other jurisdictions that speak to this point, not the marital property but the support, speak to that, what's reasonable and necessary. And my question is, is it fair to the spouse, the ex-spouse paying support, to have to pay support on income based on income that's not available to him? If the money isn't available to him, then no, that wouldn't be reasonable. Well, then I think it follows from that answer that this isn't just a bright line type of analysis. And I think the case law from the other jurisdictions that we've looked at supports that. This is a case-by-case analysis in which there has to be a showing, I think, or I would say that the cases say that there has to be a showing that this income is being deliberately hidden from the income of the payer and is not reasonable and necessary for the existence of the corporation. Well, putting that burden on the single parent to prove what the subjective intention of the obligor parent is. Well, all it takes is an account. I mean, if you read these, that's an interesting point. If you read these cases, you keep reading about how accountants came into the courtroom and testified about what was reasonable and necessary. And there wasn't any such testimony in this case. So, I mean, whose burden is it? Isn't it your burden to show that these retained earnings are being sheltered and that they're not reasonable and necessary for the maintenance of the corporation? And if it's your burden, don't you have to bring somebody in to say that? I don't think it should be the burden of the parent. I think the presumption is the parent. Well, you were the movement, weren't you? Yes. You went forward first, didn't you? Yes. But it's not your burden? I think the burden is to show the income. And we showed the income by looking at his tax returns. I think it then becomes his burden to show that if he was going to retain earnings, that was necessary for the corporation. Well, following up on Justice Palmer's question, you referred to this case as similar to in-rate joint. Yes. In an in-rate joint, the trial court had the benefit of experts to come in to testify with regards to retained earnings. Did the trial court in this case, in your case, did the trial court have that benefit, of having an expert come in to determine whether or not the retained earnings were being held back or were being improperly distributed? No. We didn't have an expert. But in joint, the joint decision turned on whether the father had control of the corporation. That was the determining rule as described by the court. There was expert testimony in joint that indicated that retained earnings were used for corporate expenses and that the husband's compensation was reasonable and fair, and there was no evidence to support that he used retained earnings to shelter marital income. There was expert testimony on the question of whether it was reasonable and fair. It didn't just turn on who had control. And so, I mean, even the case that you're citing takes into account those other factors. I'd like to make another point, which is that in this case, there was actual distributions made by the corporation. That is, the corporation made distributions to pay his taxes. He made a distribution to make a trip to India. And at the end of every year, he made a distribution from the corporation to himself in an amount of approximately $100,000 per year. He then testified that he didn't cash the check, but he put it back in the corporation. But he did withdraw the money from the corporation. So my argument is that he did actually take the money from the corporation. Well, I mean, that's a requirement of a subject arrest. You have to take the money out. And if that's true, then he did take the money out, and the money should be attributed to him. But the question is to show, and I don't know how you could do it without expert testimony, but maybe you could here. You know, the issue is, was this money needed to operate the corporation on a day-to-day basis? That's the question. Yes, and I think the testimony showed that it wasn't. There were no capital expenses, that he simply said that he needed to save the money in the event of future contingencies that might happen. And that has been ruled by the Illinois Supreme Court in Rogers that everybody, even a sole proprietor, needs to save money for a rainy day. But that doesn't mean that the money isn't income, and you still have to pay child support on it based on that calculation. Well, the funds you're referring to, those funds were never put into his personal account. He never derived any personal use out of those funds. It was mainly funds that he needed to withdraw for tax purposes for the corporation, and then after that need was no longer necessary, he put the funds back into the corporation. So where is it that he derived a personal individual benefit from those funds? Where's the testimony on that? Well, with respect to the payment of the taxes, he did receive the benefit. He had received the benefit of having his taxes paid. He received the benefit or the corporation received the benefit? He received the benefit of having his personal tax liability paid. This shows another anomalous result if we were to say that these, the monies that are being retained by the corporation are not earnings. According to the statute, he's entitled to deduct from his income the amount of money paid in taxes. According to his tax returns, his returns from 2009, for example, he had a tax liability of $39,000. If his salary is his sole income, that's $50,000 income. He deducts from that his tax liability, leaving him with $10,000 worth of income or a child support obligation of 20% of the remaining $10,000, which would be about $167,000 a month. That's what happens when we start treating his income as income for one purpose and not as income for another purpose. The fact is that the problem is if we put the burden on the mother to prove the subjective intent of the father, then we have a situation where a single parent who's trying to get food, clothing, and shelter for her child, that she's going to have to hire experts to come in and testify to do analysis. The litigation is going to take a very long time. And that's not what the legislature intended here. The legislature specifically stated that all income is income and listed specific exclusions from that income and savings for future liabilities that might happen are not listed among those, whether it's a sole proprietorship or a corporation. The fact that the father incorporated in this case is giving, if the income is not included in his baseline, that means that the father is deciding for himself what his liability is going to be. Since he's deciding how much his salary is, how much he will distribute, and how much he will leave undistributed. Anything else, Counselor? Well, I'd like to reserve my three minutes. Of course. Thank you. Good morning, Justices. Again, my name is Annette Fernals on behalf of Chana Arjuna. I just wanted to give some brief points that I think weren't quite made necessarily in the appellant's argument. I think it's important to understand that he acquired this company, purchased this company in 2007. He testified that when he purchased this company, this company was in debt for somewhere under $200,000. It's clear through the testimony provided that Mr. Arjuna has been working hard at this company to try to make it profitable and to try to make the business grow. And when you look through the exhibits, which are the tax returns that are included, you see that there has been growth over the years, until most recently the testimony was that in 2011 he lost a major contract. And then again, those retained earnings were necessary to pay the employees, to pay the rent, to pay the bills. So I think it's important to consider what Mr. Arjuna To what extent? I'm sorry? To what extent were those retained earnings necessary? I think when you look now, when you look historically, Justice, at what the retained earnings were, at some points they were $100,000. Until you get to like 2011, you start seeing those earnings are only down to like $23,000 a year. So you know that that major contract that he lost was a major hit. You also have in the record his testimony of the efforts he's making to try to expand this business by being enrolled in an A1 certification program, attending conferences, trying to expand his market, trying to expand his outreach to make this business grow. I want to move away from that for a moment. Sure. So originally the amount that he was supposed to contribute to the child support was $480 a month, correct? Correct. After this hearing, the trial court did determine that there should be an increase, correct? Correct. And I believe that was what, $643? Yes. And what was that amount based on? That amount was based on his salary of $50,000. For how many years? Or was it just the year of the hearing? The record indicates that he paid himself a salary consistently of $50,000 for the past two or three years. And in the, although the court didn't get into this specifically in her decision, in the exhibit you see his actual paycheck and you can see what his monthly, what his weekly paycheck was and the net income was. So it was based, that $643 was based on a $50,000 a year salary. So the trial court had at least an idea of what the income was and based the increase on what his income was that was presented during the hearing? Yes. And I think when the judgment was entered, I think he testified that he was earning about $33,000, somewhat less, and therefore there's the increase that was awarded to Ms. Morty. Well, this is an awful lot of money, though, that's being plowed back into the corporation. Each year it was something over $100,000. Sometimes it was as high as, what, $125,000? I think so, something like that, yes. You know, I mean, this is a lot of money that's being plowed back into the corporation for, I think what you'd call contingencies. And my question is, did these contingencies ever happen? He talked about, you know, if we lost a project and as a result we had to, you know, move a family back to India. Well, actually, the fees for the visas are not contingencies. They were actual fees. Right. I mean, isn't there a point where a court should look at this and say, well, yeah, I mean, I understand that you have to have a rainy day fund to take care of cash flow problems, but they need $125,000 in a corporation of this size? Yeah. I think that. And whose burden is it to prove that you don't, by the way? I would think that it's the burden of the movement to prove that that's not necessary. I think that when you look at what the monies were, I mean, when you look at retained earnings, retained earnings is, I mean, as we know, it's not a dollar for dollar amount. Just because the retained earnings reflect, you know, $50,000, it doesn't mean there's $50,000 of cash available at any given time. So, I mean, I think that when you look at this, was $100,000 reasonable or not reasonable? I think in this case, this court had the opportunity to review that, and she also, according to her decision, had the, you know, the bank statements of Mr. Arjuna were in evidence, so they could have been looked at to make sure there wasn't any testimony about those. Let me ask you this. You just made a good point. The court heard the testimony of the parties and made a determination to specifically address this and said that these were reasonable retained earnings. What's the standard of review for us to look at her findings? And is that the right question? I think counsel would say that's not really the right question. Counsel has taken the position, I believe, is that we shouldn't be looking at whether or not it's reasonable and necessary or whether there's an intent to shelter or anything like that. We should just be looking at control. And he points to this trip to India as an example of the fact that this money is really there for him if he wants it. Well, I think the testimony was the trip to India was an expense of somewhat $6,000. I must say that since these briefs were published, there have been some unpublished opinions that have come out about retained earnings. Yeah, let's not go there. Okay, but I'm just saying that in each... Not yet. I understand, Judge. They're still working on that. I get that. But what I'm trying to say is basically this. Each decision that comes down is really done on a case-by-case basis. And the courts do look at, what, is this a reasonable expense? Is this a reasonable amount of retained earnings to maintain this business on an ongoing basis? Is there enough money for working capital? Or is there excesses being spent here? I think in cases that I've read in other jurisdictions and in Illinois about businesses, the judges and the attorneys are always arguing about personal expenses, automobiles, trips, travel, luxuries, box tickets, all those things. All those things come into evidence, and the judge has the opportunity to evaluate, is that reasonable? Is that necessary? Is that fair? Is it a legitimate business expense? Maybe I missed it, but that brings me back to my question. What's the standard review for us to look at what the judge did? I think it's an abuse of discretion. Go ahead. Sorry. I'm sorry. Lost my train of thought. I did know if you had. I mean, I'm, yeah. I just know, I was just going to say, you know, as counsel brought out in his argument, he made some issue that, you know, Mr. Arjuna chooses to be an S, chooses to have his company as S Corp. And I think, you know, most professional services sometimes you have an S Corp. standing. I myself, my law firm is an S Corp., you know, and I get taxed on the profits of my company every year. And every year I look at that number of those profits and I ask my accountant, where's that money? You know, where's the account that has all this money that's listed as profits? And it just goes to show there's not a dollar-for-dollar correlation, even if it shows what my profits are or Mr. Arjuna's profits are for his business that he pays taxes on, that any S Corp. pays taxes on. It doesn't mean there's a bank account with that amount of money sitting in it, because it's used on a daily basis to pay expenses, to pay payroll, to pay all the needs that are required of a corporation. Would you agree that there could come a point where that number could be too high? Yes. I think a trial court has the right to evaluate when a number becomes too high. And was that evidence ever presented to the trial court in this case? Evidence regarding? When the value would be too high in this particular case. I don't think she was in, the facts before her were not necessarily in a position where she had to determine that the value was too high. I think she heard the testimony and determined it was for a legitimate business purpose and that there wasn't, you know, that Mr. Arjuna was a very frugal man and that wasn't having excessive retained earnings held back for any reason. And I think the fact of losing the contract kind of bears that out. At the time of the hearing, was the trial court presented with any evidence as to the present-day value of the corporation? No, I don't think there was ever a business evaluation done specifically. Okay. Well, do we know how much the stock is worth? He has, what, 91% of the stock? Yes. What was his contribution to obtain ownership of that stock? Was that evidence ever presented to the trial court? The testimony was that he acquired the company for $500 because the company in 2007 had substantial debt. So that was his acquisition price. But there wasn't a business evaluator hired to determine what the actual value of the business is. And I think probably more to the point, that's usually done a lot in dissolution proceedings to get to the value of a business. Wouldn't it have been important here if we wanted to determine what the retained earnings were? I think an accountant might be able to testify what retained earnings were without getting into the actual value of the business. Well, the attachments tell us what the retained earnings were. Correct. Correct. They're in the returns. And one of the attachments, I think, yeah, it delineates what those are, yes. Right. And I think also, you know, just being a practitioner in this area, you know, after getting tax returns, you know, the next thing you look at, you start looking at bank statements and evaluating and determining, do I need to bring in an expert? Is this a relatively small business that I can just look at and say, you know, that's what people pay for rent. That's what people pay for an automobile. That's what people pay in taxes. I mean, every case can't afford an expert all the time. And I must tell you, there seems to be, in my 17 years of practice, a growing proliferation of small businesses. A number of my clients now have their own small mom-and-pop businesses. A lot of them have escorts. You don't always have the means to bring in someone to evaluate the value of the business or bring in an accountant. But in those cases, I certainly look at their bank statements. I look at their tax returns. You know, some things just have to add up and make sense. And I think in this case, the court had the opportunity to look at the witnesses, to look at the testimony and say, you know, this really makes sense. There isn't a lot of fudge here. There's not a lot of liberties that Mr. Arjuna is taking. These are reasonable expenses. I have another question. With regards to the petition, it was filed in May of 2011. Yes. And then this evidentiary hearing concluded in May of 2012. Yes. Do you know why it took a year to conduct the evidentiary hearing? You know, I did not represent Mr. Arjuna at the trial court level, so I really am not sure of that, Justice, whether there was an issue with the court or an issue with the parties. I just don't know. I can't speculate. Okay. Any further questions? Thank you for your time, Justices. Thank you. Mr. Stass? I'd like to quickly address the question of burden of proof. As I've noted, I think, extensively in my argument, the father is the one who's in control of this corporation. He's the one who has the ñ who's deciding how much is going to be paid to himself in salary, how much is going to be retained. Therefore, the mother is not in a position, first off, as counsel just stated, these cases where the ñ involve small businesses, there's no money to hire accountants or experts to come in to evaluate the corporation, especially a single mother who's trying to provide food, clothing, and shelter for her child. Since it's the father who's exercising control, it should be the father's burden to show that whatever he wants excluded from attribution to himself. It should be his responsibility to explain why that should be the case. Okay. So if we say that it's the father's burden, so the father got on the witness stand, in fact, you called him, and he said, he said this is the number of employees that I have. This is how much I have to pay them. I have to pay them even if the contract falls through, and so therefore I need retained earnings for that. These are my expenses. This is what the visas cost, and this is what would happen if I lost the contract. So therefore, this is what I need. I need these retained earnings. So he's put evidence into the record that this is what he needs. Now, what did you do to rebut that? I mean, it seems to me that's when the accountant comes in and says, he's wrong. He doesn't need this much. It's not commercially reasonable. Based on accounting practices, he only needs, you know, some formula that accountants use. Let's say that gross revenue is this, and yearly expenses is this, and so retained earnings reasonably should only be 10% of, 20% of gross revenue or 20% of expenses. Some formula that shows that his testimony is not believable. But my question is, what did you do to rebut his testimony that he needed this money in the corporation? As a follow-up, though, to follow up on your initial argument, is that the right question to be asking? Is it the right question to be asking what the burden should be? Well, no. You've already explained what you think the burden should be. My question to you is, if I put the burden on him, if we put the burden on him, he testified. He said, I need this money in the corporation. So he's gone forward with evidence. My question is, what did she do to rebut that? Okay? That's number one. But to also look at the other side of your argument is, should I be asking that question? Because that comes back to your initial argument, and that is that it's really just a question of control. I'm sorry. No, I don't think that's the right question. The answer is, I did not put on evidence of as to, I did not have an expert to come and refute his testimony as to what an appropriate level of retained earnings would be. Is that because you think that that's really not the right question, and that the right question is really just control? Frankly, I had no idea that that was what was going to be litigated because of other things that had happened in the case earlier. But I want to say. Well, I'm giving you a chance to say whether you think that's the right question or not. I do not think that's the right question. Okay. I think the right question is whether or not he had control. I would also need to point out that. I'm sorry. I lost my train, and I'm afraid my time's up. Thank you. You can have additional time if you want. Okay. Thank you. This kind of thing requires an inquiry that makes the single parent who's seeking support have to characterize the father as some sort of nefarious character who's engaging in something wrong or hiding the ball, when that's not the case at all. The responsibility to pay child support is, it's not a question of whether he's good or bad. Now, in this case, you have the situation where the retained earnings were piling up. It's not just that there was $100,000 that was sitting there. In this case, the testimony showed, the evidence showed, that every single year the income, the current income of the corporation was sufficient to pay all of the expenses of the corporation. So those retained earnings were not being tapped to pay ongoing expenses. Those retained earnings were piling up, piling up, piling up, to accumulate to the point of somewhere near $600,000. And that was pointed out to the trial court. And in response to your question, Mr. Justice, I believe that that argument made to the court was sufficient to refute his argument that those reserves were necessary. Thank you. All right. Thank you, counsel. All right. Well, the court wishes to thank you for your arguments today and your excellent arguments that were also made in the briefs. We are cognizant of the fact that this is a case of first impression in the state, and we will take the matter under advisement and rule as quickly as we can. Thank you very much. Court is adjourned.